Okay, our final case for this morning is Robertson v. Allied Solutions. Mr. Dooley. Good morning, Your Honors, and may it please the Court. Matt Dooley on behalf of the appellate counsel, Mrs. Robertson. This case presents two primary issues. One, whether a change in applicable law after a settlement agreement is reached in a class action, but before preliminary approval, can result in the unwinding of that settlement by the district court judge. And two, whether Ms. Robertson had adequately pled a violation of 15 U.S.C. 1681 BB3, affectionately known as the Pre-Adverse Action Requirement of the FCRA. So can I just suggest as a structural matter, it seems to me that a court needs to have jurisdiction at all times. We've been talking about jurisdiction this morning. So if it were to turn out that before a class action settlement was approved, there had never been Article III standing or one of the other criteria for subject matter jurisdiction, I don't see that there's anything for the court to do except dismiss the case for want of jurisdiction. Your case is a little more complicated since you had a couple of grounds. There might have been a ground based on other law for which there was a real, based on Spokio and the other things, for which there was a real Article III problem. You have your adverse action claim where the Article III analysis may be different, but I don't agree. To the extent your brief argued that once you get in the door, you get to ignore Article III problems because it's a class action, doesn't work for me. So I think you need to start with the second point first and let's see if we have some kind of case. And if we have relevant precedents would support proper standing, then we can think about the class action settlement. Yes, Your Honor. With that then, let me talk for a moment about what 1681BB3 of the FCRA requires and how it applied to this case. That section, Your Honors, requires an employer, before taking an adverse action, to disclose to the applicant a copy of the Now I take it that it's your position that vis-a-vis the employer and the consumer, not the credit reporting issue, but the employer to consumer relationship, this is not about accuracy as much as it's about a chance to plead for mercy, a chance to put that adverse report in context or what the common law might have called confession and avoidance. It's not just to say, oh, that report's a mistake. It could be perfectly accurate and there would still be a function to be performed. That's correct, Your Honor. You'll hear from the appellee that there is an inaccuracy element to BB3, but there isn't. And as you just pointed out, the point of the actual statute is to give the applicant an opportunity not only to dispute if there is an inaccuracy, but also to explain or put into context the record itself. And in this case, that's particularly important because this was an arrest record that was disclosed by the Consumer Reporting Agency. At the time the employer received the consumer report, there had been no decision on the merits of that arrest. And so, of course, a job applicant would have a number of explanations at that point in time, including, I'm not guilty to the employer, but in this particular case. Or even if guilty, it's Jean Valjean, I stole the baguette or something. I could imagine that there would be things somebody might say. Absolutely. And in this case, Your Honor, Ms. Robertson did have an explanation that she was not given the opportunity to provide. But on top of that, not only was the report required to be given to the applicant, but also a written summary of rights. As this Court is already aware with other FCRA cases, the Consumer Reporting Agency is highly regulated and there are many avenues for a consumer to dispute or challenge or address information. But that's really consumer to credit agency more than, I mean, there are three actors here, right? There's the credit agency, there's the user, meaning the employer, and there's the consumer. So the consumer might tell the credit agency, you put the wrong thing down, you know, I wasn't late on that payment or, you know, I've never had that credit card or whatever. That's correct. And because this situation can recur or present itself in other community to fix that mistake or address that, because if he or she is looking for a job again or applying for a loan, as the case may be, it's important that that information has been corrected and up to date. Would your client have an injury if she were not provided a written report, but on the phone the person who retracted the job offer said, we got your report, we see that you have been arrested for, you know, such and such, and, you know, it's against our company policy to hire someone with a record. So she was told the relevant information, even if not provided the written report, you know, and said, do you have anything to say for yourself? I think she would have an injury, Your Honor, because the report itself, most consumer reports are fairly detailed, they're fairly extensive, and to have a brief phone conversation with someone who, in my experience, only tells an applicant it's because of your criminal background doesn't really afford the opportunity to the applicant to address all the elements of the consumer report. And I'll give you an example. A lot of times an employer will have a policy that prohibits a felony, for example, but maybe allows a misdemeanor. A consumer report will specify those classifications and often, in my experience, gets them wrong. But that's why it's important that a physical copy of the report be given to the applicant so he or she can actually address what's on the paper in front of the employer, not just take the employer's synthesis of that data. And that's what happened in this case, and that's what gave rise to Article III standing. Ms. Robertson never got a copy of her report. And I want to... Counsel? Yes. How is the class defined? What's the technical definition of class membership? There were two subclasses at settlement, and this case was settled. One class... No, this case was not settled. The representative and the defendant reached a settlement agreement, but a class action is settled only with the approval of the judge. And that was never received. But I wish you would address my question. Yes, Your Honor. One class was defined as individuals who did not receive a copy of their consumer report and a summary of rights before an adverse action was taken, based on that information. The other class was defined as individuals who had received a particular disclosure that that consumer report would be obtained. Is an adverse action essential to be in the class? Yes, Your Honor. And how so? Is there some place you can point me to so I can actually see the class definition? Because it's not in your brief. It's in our preliminary approval papers in the record, Your Honor. I'm happy to provide... Preliminary approval papers is not your brief. It really would have helped. So where should I go? Your Honor, the... Do you happen to remember which docket number the district court's class certification order is? We just have to look it up. If you can't find it right away, I would suggest that you give us a supplemental filing afterwards that shows the docket number and reproduces the relevant document. Absolutely, Your Honor. See, let me tell you why I'm asking this. Since we're dealing with a class action, that many of the arguments that appear in your brief seem to me to differentiate your client from other potential class members. And then you're raising the question, is there standing for the other class members? Is your client a proper representative of the class so defined? In order to figure out whether a class action can proceed, we need to figure out whether the class members have standing. And not just whether there is something particular to the class representative that might give that person standing, but nobody else. If I can address Your Honor's question in the context of the BB3 or the pre-adverse action claim specifically. As part of settlement negotiations, the parties swapped information and identified 37 individuals against whom adverse action was taken based on a consumer report without first being provided. Thirty-seven? That doesn't even sound like it's numerous enough for a class action. The case law would suggest that 37 would be sufficient for numerosity on that count. There were 763 individuals who were identified as having received a specific type of disclosure that Ms. Robertson had alleged was inaccurate. And I would just say, we can call that the notice claim. That's the one that I think runs into real problems under Spokio. The adverse action claim, I don't see as difficult under Spokio because it's quite different. It's certainly not the same claim. It's not the same claim. You've distinguished these two subclasses. But why don't you please file since time is ebbing and we will appreciate receiving that information from you. And I will give you a minute to rebut. Thank you. Mr. Beck. May it please the court. My name is Jeff Beck and I am for the Eppley Allied Solutions. It's our contention that the district court properly determined that Ms. Robertson lacked standing because she did not plead a concrete injury in fact. But I think what I'm suggesting is that we have these two different types of claims. And I take it from the way the for which I would probably agree with you 100%. Just the notice claim because under Spokio just a bare procedural right doesn't cut it. But the adverse action claim on the other hand, which may have other, you know, it's just 37 people. You know, I realize that's right on the brink of numerosity. I think there are some cases that have certified classes with that, but it's on the small end. But on that one, there really is, just as I said, in the common law, you can deny that something is wrong, but you can also provide additional context. And the Supreme Court in the Cleveland Board of Education against Loudermill case talked extensively about the value of the opportunity to present your side of the story, even where the facts are clear, because you can appeal to the discretion of the decision maker. I mean, this is not at all just a naked procedural right on the adverse action side of the case. What I would say, Your Honor, is that she still needs to plead some sort of harm, which she hasn't done. It's a lack of information is her harm. She suffered an informational injury. But even with an informational injury, the Spokio, the Supreme Court said that, you know, even with an informational injury, when their court failed or when the defendant failed to provide the information, there still had to be some other element. And that's what she's pleaded. She didn't get the job. She had the job offer withdrawn. There's an adverse consequence to this. It's not the same as the Spokio situation. But in both of the informational cases that are cited by the Supreme Court, the harm was not simply the inability to obtain information, but the inability to use that information for what it was intended to participate in. I see that exactly the problem. The question is whether you could do something with the information. If you can do something with the information, that sounds like a real injury. If you couldn't do anything with the information, it sounds like the lack of an injury. That's why I was interested in who's in the class, whether our plaintiff can be a representative of that class or the whole class and so on. There are two different situations, the people who could and the people who couldn't do something with the information. But in this case, she hasn't pled that she could have done anything with the information. She hasn't included any of that in her complaint. What she's pled in her complaint is she's pled that we obtained a consumer report on her. The report contained non-conviction information. An allied officer advised her she was terminated because of information in her report and that we did not provide her a copy of that report. She doesn't allege at any time that she wasn't told about the substance of the report and we would suggest that, in fact, she was. It's not in the pleadings, but just to answer your Honor's question earlier, your comment earlier, your example. But she also doesn't allege that she wasn't aware of the details that were in the report. She doesn't allege that she didn't have an opportunity to explain the non-conviction information. Well, why does any of that matter? She says you didn't give her the information. As Judge Easterbrook says, with information in hand, unless, well, I mean, this is at the pleading stage. I mean, maybe as a defense, your client would say, we just have a rigid rule, you know, that we don't care what anybody's reasons are for anything. As soon as we find information in a consumer report that we regard as adverse, we decline to go forward with hiring or something. But this is a very early stage and if we're going to be supplementing on your behalf, we certainly should be seeing reasonable, plausible inferences from her allegations. Well, respectfully, we don't believe that she did plead that she wasn't provided the information. She plead that she wasn't provided a copy of the report. That's the point. But not necessarily the information. And as Mr. Dooley was saying, having a copy of the report, to take Judge Barrett's example, is different from just an informal chat on the phone saying, we've got some, you know, conviction information on you. But she doesn't plead that she could have provided any information that would have changed the decision in this case. And that's where... How could she do that? She hasn't had an opportunity to have the conversation, to appeal to your discretion. But I don't... She can't be required to say it would have secured the job for her. That's not consistent with the Cleveland Board of Education notion or anything else. But we're talking about... It's not just Cleveland Board of Education. It's Southwest General Contractors, where the Supreme Court holds that loss of a chance is a real injury. So if you put a headwind against minority contractors in your contracting scheme and they lose a chance to bid, they've suffered a real injury, even though they can't show they would have got the contract. It's an important principle. So one can understand the complaint as alleging loss of a chance, which would be an injury. Maybe that's not a good way to understand the complaint. That sounds like what you're saying now. But it's not easy to just assume that loss of a chance couldn't matter. Well, the courts tell us that you have to look at the concrete... You have to consider the concrete interest that Congress sought to protect when it wrote the act. And in Groshek and Spokao, both cases, they say that, one, Congress sought to ensure fair and accurate credit reporting, and Congress plainly sought to curb the dissemination of false information by adopting procedures designed to decrease that risk. And the Supreme Court even provided an example of a bare procedural violation, which would result in no harm, that we think is very similar to what we have here. The example was where a consumer reporting agency failed to provide the required notice to a user of the agency's consumer information, but where the information was correct. But a user is the employer. The consumer... The statute has different levels of protection for different actors in the system. And the consumer needs the information, whether there's an accuracy issue or not, to facilitate that conversation with the employer, or the bank if it happens to be a lending situation, with the user who's in that middle position. So the interests are different depending on who is implicated. But if the interest of Congress is to ensure a fair and accurate credit report and to ensure that employers aren't making decisions based on incorrect information, then I think there's more that she needs to plead here than... But how would someone know whether a report is correct or incorrect if they don't have it? Well, she certainly had that... I mean, she could have that information, I'm not saying at that time, but at the time she filed her complaint, she filed an amended complaint after all that information had been provided to her. She filed a number of briefs in this case... But isn't that a little... I mean, after she's already sued, the time for making her case to the employer about why that information could be contextualized, that ship has sailed. But there have been cases where individuals have sought to amend complaints later on, and the courts have held that, and this court has held that it's not appropriate where the employee or the plaintiff has not told the court how they would amend the complaint to state a cause of action. Here, we don't believe she stated a concrete injury because all she's saying is that it had non-conviction information on it, which she doesn't dispute as being accurate, and we didn't give her a copy of the report. Isn't she also saying she didn't have a chance to explain? I mean, that's a reasonable inference, even if she doesn't in so many words say that. We don't have fact pleading in the federal courts. Surely a reasonable inference is, and if I had had that information, I could have contextualized. We could have had a conversation. I would have had a chance to use the Southwest general contractor's language. Well, I would make two points in response to that. One, she doesn't say that in her complaint. But it's a reasonable inference. Okay, and the second point is that Allied Solutions is a financial institution, and she eventually pled guilty to welfare fraud and theft, and those are not things that you can explain. And then you could have fired her if you'd wanted to. You know, it's a, that's a post hoc rationale, which is not what was going on at the time you got this report. Well, my point, I guess if I could just sum up, is that I don't believe that she's pled any harm to herself based on the facts of the case. Because of the fact that she eventually pled guilty to those, she doesn't contest the accuracy of that information, and she doesn't say anything about what context she would provide that would make Allied, or that could even, that she could even offer to make an employer change its mind. All right. But thank you. Thank you. You have a minute, Mr. Dooley, if you'd like that. If I could go back to Judge Easterbrook's question earlier, DOC ID 40, sorry, DOC 44 page ID 193 through 194, that is the class definition that's in our preliminary approval papers. I hope you will furnish us copies. Yes, Your Honor. The only thing that I didn't get a chance to talk about earlier that I want to touch upon briefly is we're also asking this court to follow the rationale that was espoused by the Third Circuit in Earhart v. Verizon and the Sixth Circuit in Whitlock v. FSL. In the Earhart case, much like this case, there was a change in applicable law after the settlement, and the defendant there, Verizon, attempted to unwind the settlement. Mr. Counsel, the cases you cite for that proposition are all changes in the law on the merits. That's different than jurisdiction. Respectfully, Your Honor, in the Verizon case, Congress took away the cause of action. It might be inferred that the... But whether a cause of action exists is a merits determination. True, Your Honor. But again, I think the standing analysis shifted quite a bit in both Earhart and Whitlock to focus on the personal stake that the class representative had in the settlement agreement that was reached and the fiduciary obligation of the district court under Rule 23 to look out for the absent class members, which in this particular case, we're going to receive the maximum statutory damages for the BB3 violation. I see my time is ending if there are no questions. I see none. Thank you very much. Thanks to both counsel. Thank you. We will take the case.